Submitted on record and briefs February 22, sentences vacated; remanded for
resentencing; otherwise affirmed April 12, respondent's petition for
reconsideration filed May 10 allowed by opinion July 19, 2006
See 207 Or App 1, 139 P3d 981 (2006)

# STATE OF OREGON,
*Respondent,*

*v.*

# ANASTACIO RAMIREZ,
*Appellant.*

## C030767CR; A123657

133 P3d 343

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and David C. Degner, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Erika L. Hadlock, Assistant Solicitor General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

LANDAU, P. J.

---

* Schuman, J., *vice* Ceniceros, S. J.

## LANDAU, P. J.

Following a jury trial, defendant was convicted of one count of attempted murder, ORS 163.115, one count of assault in the first degree, ORS 163.185, and one count of unlawful use of a weapon, ORS 166.220. The trial court imposed an upward durational departure sentence on the assault conviction, based on findings that the victim was particularly vulnerable and had sustained permanent injuries and that defendant had been persistently involved in similar offenses. The court also ordered that defendant serve his sentence for unlawful use of a weapon consecutively and that defendant not be considered for early release and sentence reduction programs.

Defendant now appeals, raising several constitutional challenges to his sentences. Defendant argues that, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), the court erred in imposing a departure sentence based on facts that defendant did not admit and that were not found by a jury. He concedes that he did not advance such a challenge to the trial court, but argues that the sentence should be reviewed as plain error.

■     ORAP 5.45(1) provides, in part:

"No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief * * *, provided that the appellate court may consider an error of law apparent on the face of the record."

Thus, although generally it is required that a claim of error have been preserved in the lower court, we nevertheless may consider errors of law that are "apparent" on the face of the record. This is known as the "plain error" rule. *State v. Terry*, 333 Or 163, 180, 37 P3d 157 (2001).

■     The Supreme Court has explained that "plain error" occurs when three criteria are met:

"(1) [the claimed error] is an error of law, (2) the [claimed] error is obvious, not reasonably in dispute, and (3) it

appears on the face of the record, *i.e.*, the reviewing court * * * need [not] go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable."

*State v. Reyes-Camarena*, 330 Or 431, 435, 7 P3d 522 (2000) (internal quotation marks omitted). We determine as a matter of law whether each of those three prerequisites is present. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). The second and third prerequisites can, at least in some cases, be somewhat redundant—if, for example, we have to "choose between competing inferences" (third prerequisite) the claimed error cannot be "obvious" (second prerequisite). But the upshot of the analysis is fairly straightforward: There must be no doubt that what the trial court did amounted to legal error.

In two recent decisions, *State v. Gornick*, 340 Or 160, 130 P3d 780 (2006), and *State v. Perez*, 340 Or 310, 131 P3d 168 (2006), the Supreme Court addressed whether plain error occurred when a trial court imposed a departure sentence based on the court's own findings of fact in the absence of an objection from the defendant. Because the Supreme Court's analysis of the issue is so important to the disposition of this case, we discuss the decisions—in particular, *Gornick*—in some detail.

In *Gornick*, the defendant was indicted for assault in the third degree. He executed a written plea agreement and pleaded guilty to the assault charge. During the plea colloquy, the trial court told the defendant that he would be giving up his right to a jury trial and that the court then would get a presentence investigation report and, on the basis of that information, impose a sentence. The defendant stated, "That's what I'd rather do." 340 Or at 168-69.

At sentencing, the trial court found three aggravating facts and imposed a durational departure sentence based on those facts. The defendant did not object to the fact that the trial court—as opposed to a jury—made those findings. Instead, he said only that he thought that the findings did not justify the departure sentences that the court imposed. On appeal, the defendant assigned error to the departure sentence, arguing that because the sentence was based on the

judge's own departure findings, it violated the law as articulated in *Blakely* and *Apprendi*. The defendant acknowledged that he did not object on those grounds at trial, but he urged us to address the issue as plain error.

We did just that. *State v. Gornick*, 196 Or App 397, 102 P3d 734 (2004). We held that the trial court committed plain error under *Blakely* and *Apprendi* when it made factual findings that formed the basis for its departure sentence. The Supreme Court reversed. We quote the court's analysis in its entirety:

> "Defendant's guilty plea clearly stated that he was giving up his jury trial rights, and he explicitly consented to having the trial court impose a 'sentence which the Court [found] appropriate, up to the [five-year] maximum sentence.' Defendant's only objection challenged the sufficiency of the facts upon which the departure was based, essentially implying that they were not 'substantial and compelling reasons' as required by OAR 213-008-0001. The record shows that defendant took no issue with the trial court's factfinding. Defendant sat by quietly and made no other objections while the trial court proceeded to find the aggravating facts and to impose a departure sentence based upon those facts. Given those circumstances, defendant could have chosen to have the trial court, rather than a jury, find the aggravating facts.

> "Thus, we are left with a single event, the trial court finding the aggravating facts, but multiple competing inferences that can be drawn from that event. One possible inference is that the trial court erred by finding the aggravating facts in violation of the Sixth Amendment. Another possible inference is that defendant chose, for one of many possible reasons, not to have a jury find the aggravating facts. If that were the case, the trial court did not err. A third possible inference is that defendant did not want the trial court to find the facts but chose not to object for strategic purposes. In sum, the record does not clearly show that the trial court erred, only that it may have erred. We would be speculating were we to state otherwise.

> "In conclusion, because we would be forced to choose between competing inferences respecting the trial court's

finding of the aggravating facts, the claimed error is not one appearing 'on the face of the record' under ORAP 5.45(1)."

340 Or at 169-70.

In *Perez*, the court applied *Gornick* to a case in which the defendant similarly had waived his right to a jury trial on two of the charges against him and agreed to have those charges tried to the court on stipulated facts. He further stated in the waiver form that he understood that "the actual sentence is up to the court." *Perez*, 340 Or at 317. At sentencing, the trial court found several aggravating facts and imposed a departure sentence without objection from the defendant. On appeal, the defendant argued that the trial court's decision with respect to the departure sentence was plain error, and we agreed. *State v. Perez*, 196 Or App 364, 369-72, 102 P3d 705 (2004). The Supreme Court reversed, explaining briefly that the foregoing circumstances are very similar to the circumstances that were present in *Gornick*, in that "several competing inferences [ ] could be drawn from the trial court's finding of the aggravating facts." *Perez*, 340 Or at 317.

Thus, in both *Gornick* and *Perez*, the court concluded that plain error was not present because "competing inferences" could be drawn from the trial courts' decisions and the fact that the defendants did not object to them. That much seems clear enough.

What is not clear to us is the intended scope of the court's analysis, particularly in *Gornick*. Two ambiguities impart some uncertainty in our reading of the decision. First, the precise nature of the inferences that the court drew in *Gornick* is not clear. Second, the source(s) of those inferences likewise is less than perfectly apparent. We amplify those difficulties with respect to each of the three inferences that the court described.

The first "inference," at least as the court phrased it—that "the trial court erred by finding the aggravating facts in violation of the Sixth Amendment"—is not so much an inference as a possible conclusion about the legal consequences of the facts. We understand the court to mean that one inference that can be drawn from the facts is that the

defendant did not waive his right to have a jury find the aggravating facts. If that is so, it is an inference that can be drawn in any case in which a defendant fails to object to the trial court's findings. We note that the court did not actually say that it could be inferred that the defendant did not "waive." But we do not understand by what other reasoning the court could arrive at the inference that the trial court erred. We therefore proceed with the understanding that the first of the inferences in *Gornick* was that the defendant did not waive his right to have a jury decide his departure sentence facts.[1]

The second inference—that "defendant chose, for one of many possible reasons, not to have a jury find the aggravating facts"—implicates both of the types of ambiguities that we have described; that is, neither the precise nature of the inference nor the source of the inference is clear.

■ We begin with the nature of the inference that the court described. The court phrased the inference as a choice not to have a jury decide the aggravating facts. Once again, we understand the court to be describing a sort of waiver; if it is not waiver that the court is referring to, we do not understand how, logically, the consequence of the defendant's choice could be that the trial court did not err. As the United States Supreme Court stated explicitly in *Blakely*, in the absence of a defendant's admission or a waiver, it is error for a trial court to make departure sentence findings. *Blakely*, 542 US at 310 ("[N]othing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements *so long as* the defendant either stipulates to the relevant facts or *consents* to judicial factfinding. * * * Even a defendant who stands trial *may consent* to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial." (Emphasis added.)).

---

[1] It is perhaps also worth noting that the necessary implication of the court's first inference in *Gornick* is that the court agreed with the conclusion in our opinion in *Perez*, 196 Or App at 369-72, that the particular findings that the court made did not fall within the "fact of prior conviction" exception to *Blakely* and *Apprendi*. Otherwise, the fact that the defendant had chosen not to waive would not result in error.

■ We say "a sort of waiver" because it is apparent that the court in *Gornick* assumed that something short of the usual requirements of waiver may suffice in sentencing cases. It is hornbook law that a waiver is a voluntary relinquishment of a known right. *Johnson v. Zerbst*, 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938); *Bennett v. Farmers Ins. Co.*, 332 Or 138, 156, 26 P3d 785 (2001). There must be at least some evidence that the defendant knew of the nature of the right before we can infer that he or she exercised a choice to waive it. *United States v. Ruiz*, 536 US 622, 629, 122 S Ct 2450, 153 L Ed 2d 586 (2002) ("[T]he Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.' "); *Taylor v. Illinois*, 484 US 400, 418, 418 n 24, 108 S Ct 646, 98 L Ed 2d 798 (1988) (holding that a right to a jury is one of the "basic rights" that cannot be waived "without the fully informed and publicly acknowledged consent of" the defendant); *Huffman v. Alexander*, 197 Or 283, 322, 251 P2d 87 (1952) (waiver of fundamental constitutional right "must be voluntary and must be understandingly made with knowledge by the party of his rights").

In *Gornick*, however, there is no mention of any evidence that the defendant knew that he had a right to a jury trial on his departure sentence facts. There is, as the court pointed out, evidence that he acknowledged the court's authority to determine those facts. But that does not necessarily imply that the defendant knew that a jury also had authority to determine those facts. Whatever anomalies might flow from the court's recognition of the possibility of inferring waiver in *Gornick*,[2] however, we once again proceed with the assumption that that is the nature of the inference that it drew in that case.

---

[2] Such anomalies are not limited to what we have described. If the court is correct that, at least in sentencing cases, it is not necessary to find evidence in the record that a defendant actually knew of the right that he or she has waived, then we do not understand how there could be competing inferences as to trial court error *vel non*. For, if evidence of such knowledge is not necessary, then there would seem to be no basis for the inference that the defendant *did not* waive. Thus, at least on the facts before the court in *Gornick*, there would be only one permissible inference, that is, that the defendant waived and that the trial court did not err.

As for the source of the court's inference of waiver in *Gornick*, there is further ambiguity. On the one hand, it could be that the court concluded that such an inference is permissible from the fact that the defendant "sat by quietly and made no other objections while the trial court proceeded to find the aggravating facts." 340 Or at 169. Indeed, from the phrasing of the court's opinion, that would seem to be the court's reasoning.

The problem is that drawing an inference that a defendant waived a significant constitutional right from that defendant's silence alone generally is regarded as impermissible. *Boykin v. Alabama*, 395 US 238, 243, 89 S Ct 1709, 23 L Ed 2d 274 (1969) ("We cannot presume a waiver of [the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers] from a silent record."); *see also Carnley v. Cochran*, 369 US 506, 516, 82 S Ct 884, 8 L Ed 2d 70 (1962) ("Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."); *State v. Meyrick*, 313 Or 125, 131-32, 831 P2d 666 (1992) ("Courts, however, are reluctant to find that fundamental constitutional rights have been waived. Accordingly, a valid waiver will not be presumed from a silent record."); *State v. Grenvik*, 291 Or 99, 102, 628 P2d 1195 (1981), *overruled on other grounds by State v. Probst*, 339 Or 612, 124 P3d 1237 (2005) (waiver of counsel may not be presumed from a silent record); *State v. Boswell*, 92 Or App 652, 656, 760 P2d 276 (1988) (same); *State ex rel Dept. of Human Services v. Sumpter*, 201 Or App 79, 89, 116 P3d 942 (2005) (waiver of right to trial cannot be inferred from silence). Particularly in light of the fact that Article I, section 11, of the Oregon Constitution requires waivers of jury trials to be in writing, we think it unlikely that the court intended to suggest that it would be permissible to infer a waiver of the right to a jury trial from silence alone.

On the other hand, it could be that the court concluded that the inference is permissible from the fact of the defendant's silence in the context of his "explicit[ ] consent[ ] to having the trial court impose" the maximum sentence. 340

Or at 169. That reading narrows the effect of *Gornick* somewhat and avoids conflicting with the rule that silence alone cannot serve as the basis for a waiver of the right to a jury trial. Still, as we have noted, even such explicit consent as the court described ordinarily does not suffice to constitute a waiver in the absence of evidence that the defendant had knowledge of the nature of the right that he waived.

Be that as it may, the second reading that we have described seems to us the least illogical, and so we proceed with the assumption that the source of the court's second inference in *Gornick* was not the defendant's silence alone but, rather, his silence in the context of an explicit waiver of a right to a jury trial as to guilt and his express consent to have the trial court impose a sentence up to the statutory maximum.

The precise nature of the third inference—that "defendant did not want the trial court to find the facts but chose not to object for strategic purposes"—is more ambiguous still. To begin with, it seems redundant of the second inference that the court already had described in *Gornick*. The second involved a defendant's choice not to object to the trial court making departure sentence findings. The third involved the very same choice—not to object—but for a particular, "strategic," reason. Why a defendant's subjective purpose is relevant to a determination whether the defendant waived a constitutional right is not clear to us.

Aside from that, the court did not explain what "strategic purpose[ ]" could be accomplished by not objecting to the trial court's findings. In the abstract at least, it could be that a defendant might knowingly say nothing in the face of trial court error as an exercise in "sandbagging," that is, to create a potential issue for appeal. But, even so, we do not understand how such strategic silence could be a legally cognizable inference for preservation purposes. The rule of preservation was, in fact, created to preclude precisely that sort of strategy. *See, e.g., State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (explaining purposes of preservation rule). In any event, if such conduct results in trial court error, then it is redundant of the first inference, which, as we have noted, is

an inference that is available in every case in which a defendant fails to object to trial court error.[3]

As a result, we proceed with the assumption that the third inference in *Gornick* either is redundant of the first or is predicated on the facts of that particular case in ways that the court simply did not describe.

In summary, it seems to us fair to say that *Gornick* stands for the proposition that, if we are able to draw at least two inferences from the defendant's failure to object, one of which suggests that the trial court erred and another of which suggests that the trial court did not err, then the error is not "plain" within the meaning of ORAP 5.45(1). It further seems fair to say that *Gornick* holds that, *on the facts of that case*—in which the defendant waived a jury trial and expressly consented to the trial court's authority to impose the maximum sentence—multiple inferences could be drawn from the defendant's failure to object to the trial court making aggravation findings. One of those inferences was that the defendant did not waive his right to a jury trial as to the departure sentence facts, in which case the trial court erred. A second of those inferences was that the defendant did waive his right to a jury trial as to those facts, in which case the trial court did not err. We do not read *Gornick* broadly to hold that, in all cases in which a defendant failed to object to the trial court's departure findings, we cannot properly conclude that the trial court plainly erred in violation of *Blakely* and *Apprendi*. Whether the trial court committed plain error will depend on the facts of each case. *See Meyrick*, 313 Or at

---

[3] At the same time, if such strategic silence leads to the "inference" that the trial court did *not* err, and that inference *does* produce the sort of competing inferences that can defeat plain error, a troubling anomaly results, because such will be the case *in every case* in which a defendant fails to object. In other words, there logically could never be a case of plain error.

That is so because, as we have noted, the first of the three *Gornick* inferences is available in every case in which a defendant fails to object. That inference (that the defendant did not intend to waive) leads to the conclusion that the trial court erred. And, as we have just noted, the third inference (that defendant remained silent for strategic purposes) likewise can be drawn from any case in which the defendant fails to object. Logically, it necessarily follows, therefore, that in every case in which a defendant does not object to a trial court making departure sentence findings—in any case in which a defendant does not object to any trial court ruling—there are at least two competing inferences that are sufficient to defeat plain error. We find it difficult to believe that the Supreme Court intended that.

132 ("Whether there has been an intentional relinquishment or abandonment of a known right or privilege will depend on the particular circumstances of each case[.]").

With that in mind, we turn to the disposition of this case. Defendant did not waive a jury trial. In fact, defendant's case on the merits was tried to a jury, and the jury found him guilty. At sentencing, defendant did not expressly consent to the trial court's authority to impose the statutory maximum sentence. At the same time, as we have noted, defendant did not object on the ground that the trial court imposed a departure sentence based on its own departure findings. In our opinion in *Gornick*, we concluded that *Blakely* and *Apprendi* preclude trial courts from making the sorts of findings that the trial court in this case made in the absence of an admission by defendant or a waiver of his right to a jury trial, and the Supreme Court's decision on review did not disturb that portion of our opinion. In this case, defendant did not admit the departure facts, nor did he expressly waive his right to a jury trial. The question, then, is the extent to which we are able to draw the sort of competing inferences that the court drew in *Gornick* and that would defeat defendant's claim of plain error.

Certainly we can infer from the foregoing facts that, as in *Gornick*, defendant perhaps did not intend to waive his right to a jury trial as described in *Blakely* and *Apprendi*. And, as the court explained in *Gornick*, that would result in trial court error.

In this case, however, unlike *Gornick*, we cannot permissibly infer that defendant did intend to waive his right to a jury trial as to the departure sentence facts. As we have noted, both state and federal constitutional principles foreclose drawing such an inference from mere silence.

And, again unlike *Gornick*, in this case we are unable to infer the possibility that defendant in fact did not want the trial court to make such departure findings but said nothing for strategic purposes. We acknowledge that, at least in theory, we could infer that defendant in this case did not object to the trial court making departure findings in the hope that the court would make more favorable findings or, if that did not turn out to be the case, in the hope that he would

have created potential appealable error. But, for the reasons that we have identified, it seems to us that such inferences, even if logically possible, are legally impermissible.

■      In short, on the facts of this case, we lack any competing inferences about defendant's failure to object when the trial court made its departure findings. It necessarily follows that the trial court committed plain error when it made those findings.

That does not end the matter. Even if a trial court committed plain error, there remains the question whether it is appropriate for us to exercise our discretion to address the error. *Ailes*, 312 Or at 382. Considering the interests of the parties and the gravity of the error, we conclude that it is appropriate. The state has no valid interest in requiring defendant to serve an unlawful sentence; for defendant, however, a significant liberty interest is at stake.

Defendant advances other assignments of error concerning his sentence, but, in light of our disposition of the foregoing assignment, we need not discuss them. *See* ORS 138.222(5)(a) (requiring that, if trial court commits an error that requires resentencing on any charge, the appellate court shall remand the entire case for resentencing).

Sentences vacated; remanded for resentencing; otherwise affirmed.